IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELITE CENTER FOR MINIMALLY INVASIVE SURGERY LLC *Plaintiff* | § § § § | |
| v. | § § | Civil Action No. _____ |
| HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, d/b/a BLUECROSS BLUESHIELD OF ILLINOIS and BLUE CROSS AND BLUE SHIELD OF TEXAS, INC., A DIVISION OF HEALTH CARE SERVICE CORPORATION *Defendants* | § § § § § § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES, ELITE CENTER FOR MINIMALLY INVASIVE SURGERY LLC, hereinafter referred to as Plaintiff, complaining of and about HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, d/b/a BLUECROSS BLUESHIELD OF ILLINOIS, and BLUE CROSS AND BLUE SHIELD OF TEXAS, INC., A DIVISION OF HEALTH CARE SERVICE CORPORATION, collectively hereinafter referred to as Defendants, and for cause of action show unto the Court the following:

### PARTIES

1. Plaintiff, ELITE CENTER FOR MINIMALLY INVASIVE SURGERY LLC, is a Texas Limited Liability Company with operations and its place of business in Harris County, Texas.

2. Defendant, HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY, is a corporation that is incorporated under the laws of the State of Illinois and has its principal place of business in the State of Illinois. It may be served with process by

serving any officer or agent of the corporation at 300 East Randolph Street, Chicago, Illinois 60601.

3. Defendant, BLUE CROSS AND BLUE SHIELD OF TEXAS, INC., A DIVISION OF HEALTH CARE SERVICE CORPORATION, is a corporation that is incorporated under the laws of the State of Illinois and has its principal place of business in the State of Texas. It may be served with process by serving its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## JURISDICTION AND VENUE

4. Plaintiff's claims arise in part under 29 U.S.C. §§ 1001, *et seq.*, the Employment Retirement Income Security Act ("ERISA"). Therefore, this Court has jurisdiction over those claims under 28 U.S.C. § 1331. Furthermore, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's non-ERISA claims, as those claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

5. Venue is properly established in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this suit occurred in this judicial district.

## STATEMENT OF FACTS

6. Plaintiff is a medical provider that offers ambulatory surgical services in the fields of orthopedics, podiatry, pain management, spine, gastroenterology, and pediatric ENT. Their teams consist of seasoned professionals, including award-winning surgeons and top-performing nurses and staff.

7.      Healthcare providers, such as Plaintiff, are classified as either "in-network" medical providers or "out-of-network" medical providers. "In-network" medical providers have pre-determined discounted rates with health insurance companies. Conversely, "out-of-network" medical providers do not have pre-determined discounted rates with health insurance companies and are paid "usual and customary" rates for the same or similar medical service in their geographical area. Plaintiff is an out-of-network medical provider.

8.      Patients pay significantly higher health insurance premiums for out-of-network health benefits in order to have access to out-of-network medical providers. Patients pay these higher premiums for assurance and peace of mind they will be able to obtain necessary medical services from a physician, medical provider and medical facility of their choice.

9.      Defendants are the administrators for claims made against patients' Blue Cross Blue Shield health benefit plans for medical services performed at Plaintiff's surgical facility.

10.     Defendants exercised discretion, control, authority and/or oversight in the administration of these claims, including determining whether to pay and how much to pay for the medical services provided by Plaintiff. Defendants administered each and every claim at issue in this lawsuit.

11.     The claims at issue in this lawsuit are the result of non-payment or under-payment of claims made by Plaintiff against patients' Blue Cross Blue Shield health benefit plans for medical services performed at Plaintiff's surgical facility.

12.     Plaintiff followed the same process for each and every claim in the lawsuit as described below. This process is routine for Plaintiff's business and routine within the health care industry.

13. Plaintiff received orders from physicians requesting the scheduling of medical services to be performed by the physician at Plaintiff's surgical facility. The orders contained the patient's name, contact information, and identified the medical services to be performed.

14. Plaintiff contacted the patient to obtain their health insurance information including policy number. Prior to scheduling or performing any medical services, Plaintiff called the Defendants at their designated telephone number to verify covered health benefits, including out-of-network benefits and coverage for the particular medical services to be performed. Plaintiff also verified that reimbursement for the medical services would be made at the usual and customary rate for the same or similar medical services in and around Plaintiff's geographical area.

15. Plaintiff relied upon the information provided by Defendants during this verification process, including representations from Defendants that Plaintiff was to be reimbursed at the usual and customary rate for the medical services provided.

16. Plaintiff scheduled the medical services with the patient. Upon arrival for the procedure, each patient expressly and knowingly executed an Assignment of Benefits. The Assignment of Benefits transferred and assigned to Plaintiff the rights and interest to collect and be reimbursed for the patient's medical service(s) performed at Plaintiff's facility.

17. After medical services were performed, Plaintiff properly and timely submitted claims through Defendants' designated claims handling channels. Defendants either denied the claims outright or drastically underpaid the claims.

18. After Defendants either denied or underpaid the claims, Plaintiff properly and timely appealed the non-payment and underpayment of the claims through Defendants' designated appeals channels. Defendants denied each and every appeal for each and every claim at issue in this lawsuit thereby exhausting Plaintiff's administrative remedies.

19. Exhibit "A", which is incorporated herein by reference, is a spreadsheet showing the non-payments and underpayments for each claim in this case. The spreadsheet contains the claims, dates of service, policy numbers, group ID numbers, usual and customary amounts incurred and billed for services rendered, and the amounts actually paid for those services.

20. Plaintiff billed $10,525,559.17 which is the usual and customary rate for the particular medical services in and around Fort Bend and surrounding counties. Defendants paid a mere $418,457.32, which is approximately 3.98% of the amount billed for the services rendered.

21. Payment of 3.98% of the usual and customary rates for same or similar medical services rendered is dramatically lower than any other of the Plaintiff's commercial insurance payors, including United, Cigna, and Aetna, and is tantamount to no payment at all.

22. Moreover, based on information and belief, payment of 3.98% of the usual and customary rates for same or similar medical services rendered is drastically lower than any other recognizable third party commercial or even government payor in the larger health care industry, including United, Cigna, Aetna and Medicare, respectively. Significantly, patient's pay higher premiums, at times substantially higher premiums, so that they may receive medical treatment from the provider of their choice, including from out of network providers. They bargain for and expect that payment be made at the providers' usual and customary rates. In Plaintiff's experience, the payment of a paltry four cents on the dollar for the rendering of medical treatment is unprecedented.

23. Upon information and belief, Defendants acted as and/or were designated as the plan administrators and as fiduciaries to the beneficiaries for each of the claims at issue in this case. Defendants exercised discretion, authority, control and oversight in determining if plan benefits would be paid and the amounts of plan benefits that would be paid. Defendants'

administration of these claims resulted in the payment of a mere 3.98% of the usual and customary rates for medical services rendered.

24. Plaintiff's causes of action arise out of violations of two separate categories of insurance policies: ERISA plans and private insurance plans.

25. ERISA plans are plans in which an employer either sponsors a health plan who assumes financial responsibility for the insureds' medical claims or contracts with a health insurance company who assumes financial responsibility for the insureds' medical claims. These plans are governed by ERISA.

26. Private insurance plans are plans which individual patients contract with a health insurance company who assumes financial responsibility for the insureds' medical claims on an individual basis. These plans are governed by Texas state law.

27. For purposes of completeness, another category of insurance policies exist in which individuals are insured under the Federal Employees Health Benefits Act. This lawsuit does not concern any patients covered by FEHBA plans.

28. Despite the differences in the categories of the insurance policies above, all of the claims at issue in this lawsuit were administered by the Defendants and were not paid or reimbursed at the usual and customary rates for the same or similar medical services in and around Fort Bend and surrounding counties.

## ERISA BASED VIOLATIONS

29. The ERISA based causes of actions described within this section arise from the ERISA health benefits plan described above.

30. 29 U.S.C. § 1002(8) defines "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit

thereunder." As assignees of the ERISA insured members Plaintiff is the beneficiary for all purposes throughout this Complaint.

31. 29 U.S.C. § 1002(21)(A)(iii) determines that one is a "fiduciary" to the extent that the person "has any discretionary authority or discretionary responsibility in the administration" of a health benefits plan. As described above, Defendants functioned as fiduciaries with respect to the plans at issue in this case because Defendants exercised discretion, authority, and control in determining whether and to what extent benefits would be paid to Plaintiff. Therefore, Defendants are fiduciaries to Plaintiff.

32. 29 U.S.C. § 1002(3) defines "employee benefit plan," in part, as an employee welfare benefit plan. 29 U.S.C. § 1002(1) defines "employee welfare benefit plan" as follows:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,
> (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or
> (B) any benefit described in section 186 (c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

Defendants are considered the employee benefit plan for each of the ERISA claims identified herein.

### COUNT 1: PROVIDERS' CLAIMS UNDER 29 U.S.C. § 1132(a)(1)(B)

33. The allegations contained in Paragraphs 1 through 32 are re-alleged and incorporated herein as if set forth verbatim.

34. Plaintiff brings this action as a beneficiary to recover benefits under ERISA health benefit plans. Under 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to recover benefits for providing medical services to patients from whom Plaintiff received an Assignment of Benefits.

35. The health benefit plans allow for reimbursement of reasonable and necessary medical expenses at usual and customary rates. Plaintiff billed the usual and customary rates for its geographical area for medical services rendered and Defendants administered the claims resulting in drastic underpayments in the amount of $10,107,101.85, inclusive of the State law claims.

**COUNT 2: FAILURE TO PROVIDE FULL & FAIR REVIEW UNDER 29 U.S.C. § 1133**

36. The allegations contained in Paragraphs 1 through 35 are re-alleged and incorporated herein as if set forth verbatim.

37. 29 U.S.C. § 1133 and its regulations mandate that Defendants provide a "full and fair review" and make certain disclosures. These requirements are imposed upon the ERISA employee benefit plans. Defendants, acting as the employee benefit plans for each of the ERISA claims within this suit, wholly failed to comply with these requirements.

38. 29 U.S.C. § 1133 states:

> In accordance with regulations of the Secretary every employee benefit plan shall (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim.

39. Defendants failed to provide the specific reasons for their denials of benefits and the denials were not written in a manner calculated to be understood by the participant. Specifically, the denial letters from Defendants either gave no explanation as to why the claim was

denied or underpaid, gave an explanation that was conclusory in nature and/or made no attempt to explain any rational basis for the denials or underpayments.

   40. Furthermore, Defendants failed to provide a full and fair review. Plaintiff requested, in writing and on multiple occasions, copies of documents related to the claims and plans at issue in this case. Pursuant to 29 C.F.R. 2560.503-1(h)(2), Defendants were required, among other things, to do the following:

   (ii) Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;

   (iii) Provide that a claimant be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

   (iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

Defendants wholly failed to fulfill their obligations and therefore failed to provide a full and fair review to Plaintiff. Despite demand for all documents, records, and other information relevant to Plaintiff's claim for benefits, Defendants produced nothing to Plaintiff. Furthermore, Defendants' review fails to take into account all comments, documents, records, and other information submitted by Plaintiff. When Plaintiff appealed these determinations, Defendants rarely amended their initial determination that denied or substantially underpaid the benefits owed under the plan. Defendants either provided no explanations for their adverse determinations against Plaintiff or provided conclusory explanations that frequently consisted of one to two sentences that read that Defendants were "maintain[ing] the prior decision" or that the "claim processed correctly."

41. Plaintiff was proximately harmed by Defendant's failure to comply with 29 U.S.C. § 1133, and have been damaged in the amount of at least $10,107,101.85, inclusive of the State law claims.

42. In addition, 29 U.S.C. § 1132(c) provides penalties for an administrator's refusal to supply required information. 29 U.S.C. § 1132(c)(1)(B) provides:

> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

43. Moreover, 29 U.S.C. § 1024(b)(4) states, in part, "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, or other instruments under which the plan is established or operated."

44. Defendants acted as plan administrator and/or were designated as plan administrator by each of the ERISA plans at issue in this case. Despite their clear obligations under the plans and ERISA, Defendants wholly failed to provide any plan documents to Plaintiff despite repeated requests by Plaintiff.

45. The acts and omissions on the part of Defendants in failing to comply with the request for information pursuant to 29 U.S.C. § 1132(c)(1)(B) and in violation of 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1(h)(5), make Defendants liable for a civil penalty/sanction in the amount

of $100 per day for such failure and refusal to provide the requested documents. As such, Plaintiff is not only entitled to the requested documents through an appropriate order of this Court but they are also entitled to the $100 per day civil penalty for each claim at issue in this case.

### COUNT 3: BCBS'S BREACH OF FIDUCIARY DUTIES UNDER 29 U.S.C. § 1132(a)(3)

46. The allegations contained in Paragraphs 1 through 45 are re-alleged and incorporated herein as if set forth verbatim.

47. 29 U.S.C. § 1132(a)(3) states that a civil action may be brought by "a participant, beneficiary, or fiduciary to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

48. Plaintiff, as the assignee of ERISA members and beneficiaries under the insurance plans, are entitled to assert a claim for relief for Defendants' breach of fiduciary duties of loyalty and care and for failure to follow plan documents under 29 U.S.C. § 1104(a)(1)(B) and (D). Defendants acted as fiduciaries to Plaintiff and/or to patients who made assignments of benefits to Plaintiff. Defendants exercised discretion, control, authority and oversight in determining whether plan benefits would be paid and the amounts of plan benefits that would be paid.

49. 29 U.S.C. §§ 1104(a)(1)(B), (D) provides for the prudent man standard of care stating:

> Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (B) with the care skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

11

50.  Moreover, Defendants breached the fiduciary duties identified above by not paying or drastically underpaying claims. Additionally, the administration of the claims by Defendants subsequent to procedures performed by Plaintiff conflicted with the representations made by Defendants' representatives during the verification process. The determinations of the benefits to be paid were made to the benefit of Defendants and to the detriment of Plaintiff.

51.  By engaging in the conduct described above, Defendants failed to act with the care, skill, prudence, and diligence under the circumstances that a prudent plan administrator would use in the conduct of an enterprise of like character. The conduct demonstrated throughout this Complaint establishes Defendants' failure to exercise reasonable care toward Plaintiff. This conduct resulted in an underpayment to Plaintiff of $10,107,101.85, inclusive of the State law claims, and impaired Plaintiff's continued operation and treatment of its patients. Plaintiff's operations and treatment of its patients remain in peril due to Defendants' actions.

## STATE LAW CLAIMS

### COUNT 4: BREACH OF CONTRACT

52.  The allegations contained in Paragraphs 1 through 51 are re-alleged and incorporated herein as if set forth verbatim.

53.  With respect to the private individual health benefit plans, patients fulfilled their obligations by paying premiums for out of network health insurance benefits.

54.  Plaintiff brings this action to recover benefits under the patients' individual health benefit plans for providing reasonable and necessary medical services to patients and from whom Plaintiff received an Assignment of Benefits.

55.  The health benefit plans allow for reimbursement of reasonable and necessary medical expenses at usual and customary rates in and around the treating medical providers'

geographical area. Plaintiff billed these usual and customary rates for the same or similar medical services rendered and Defendants administered the claims resulting in drastic underpayments in the amount of $10,107,101.85, inclusive of the ERISA claims, thereby breaching the patients' health benefits plan.

## COUNT 5: PROMISSORY ESTOPPEL

56. The allegations contained in Paragraphs 1 through 55 are re-alleged and incorporated herein as if set forth verbatim.

57. During the verification phone conferences between Plaintiff and Defendants, Defendants represented to Plaintiff that the patients and services were covered by health insurance policies that contained out-of-network benefits. Moreover, Plaintiff also verified that reimbursement for the medical services would be made at the usual and customary rate for the same or similar medical service in and around Fort Bend and surrounding counties.

58. Plaintiff reasonably and substantially relied on the verifications from Defendants by performing medical services. Undoubtedly, Plaintiff would never have performed the medical services without verification from Defendants that the patients and services would be covered at the usual and customary rate.

59. Furthermore, Plaintiff's reliance on Defendants' promises was foreseeable by Defendants. The entire purpose of Plaintiff's verification confirmation calls was to obtain assurance that the patient and the medical services were covered. Defendants, who are in the business of administering health insurance policies, understood this fact and knew or should have known that Plaintiff would perform medical services after Defendants' verification of coverages and assurance of payments.

60. Defendants failed to pay and underpaid Plaintiff's claims causing drastic underpayments in the amount of $10,107,101.85, inclusive of the ERISA claims.

## VI. DAMAGES

61. The allegations contained in Paragraphs 1 through 60 are re-alleged and incorporated herein as if set forth verbatim.

62. Plaintiff is entitled to actual damages in the amount of at least $10,107,101.85.

63. In addition, the acts and omissions on the part of Defendant in failing to comply with the request for information pursuant to 29 U.S.C. § 1132(c)(1)(B) and in violation of 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1(h), make Defendants liable for a civil penalty/sanction in the amount of $100 per day for such failure and refusal to provide the requested documents.

64. Plaintiff is entitled to an award of attorneys' fees on its ERISA claims. *See* 29 U.S.C. § 1132(g)(1) (allowing a court, in its discretion to award "a reasonable attorney's fee and costs of action to either party."); *See also Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2152 (2010).

65. Plaintiff is also entitled to an award of attorneys' fees on their state law claims. Plaintiff has presented claims to Defendants, along with an Assignment of Benefits, demanding payment for the value of the services described above. Defendants have failed and refused to pay Plaintiff more than 30 days after the demands were made pursuant to the Texas Civil Practices and Remedies Code section 38.001. As a result of Defendants' failure to pay these claims, Plaintiff was required to retain legal counsel to institute and prosecute this action.

## VIII. CONCLUSION

66. Plaintiff prays for the following relief: judgment for actual damages; attorneys' fees; pre- and post-judgment interest; costs of suit; and any other relief to which Plaintiff may be

justly entitled.

          Respectfully submitted,

          Bergquist Law Firm

          By: /s/ David W. Bergquist
          David W. Bergquist
          Southern District of Texas No. 37790
          Texas State Bar No. 24040512
          50 Waugh Drive, Suite 400
          Houston, Texas 77007
          Tel. (713) 655-8000
          Fax (713) 739-0000
          Email: dwb@bergquistlawfirm.com
          Attorney for Plaintiff
          ELITE CENTER FOR MINIMALLY INVASIVE SURGERY LLC