United States District Court
Southern District of Texas

**ENTERED**

October 04, 2016

David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ELITE CENTER FOR MINIMALLY | § | |
| INVASIVE SURGERY LLC, | § | |
| *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 4:15-CV-00954 |
| HEALTH CARE SERVICE CORPORATION, | § | |
| a Mutual Legal Reserve Company, | § | |
| d/b/a BLUECROSS BLUESHIELD OF ILLINOIS | § | |
| *Defendant*. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Court is defendant Health Care Service Corporation's motion to dismiss plaintiff Elite's second amended complaint. Dkt. 51. The motion should be granted in part and denied in part.

## BACKGROUND

This is an action by a Houston area medical provider (Elite) against a health insurance company (HCSC) challenging the denial or underpayment of nearly 1,500 separate health care claims submitted on behalf of insured patients from 2010 through 2012. Invoking both the federal Employee Retirement Income Security Act and state common law, Elite seeks to recover nearly $30 million allegedly due under the patients' ERISA and non-ERISA plans.

Elite's current complaint[1] alleges four causes of action seeking: (1) benefits due under ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)]; (2) statutory penalties under ERISA § 502(c) [29 U.S.C. § 1132(c)] for failing to provide claim denial information; (3) damages for breach of contract; and (4) promissory estoppel. HCSC has moved to dismiss all counts for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## ANALYSIS

---

[1] Elite was twice granted leave to amend in order to address deficiencies pointed out in earlier motions to dismiss by HCSC. Dkt. 26 & 31. Also, the Second Amended Complaint incorporates closely similar allegations from a recently consolidated case, Civil Action H-16-573, asserting the same causes of action against the same defendant for a later set of claims arising from mid-2011 to 2012. Dkt. 46.

In considering a 12(b)(6) motion to dismiss, the court must accept as true all well-pleaded facts and view the allegations in a light most favorable to the non-movant. *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010). While the complaint is not required to contain detailed factual allegations, it must plead sufficient facts to state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The court reviews the complaint, documents attached to the complaint, and any documents accompanying the motion to dismiss that are referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## Count One: ERISA § 502(a)(1)(B) Claim for Benefits Due

ERISA § 502(a)(1)(B) authorizes a suit by plan participant or beneficiary "to recover benefits due under the terms of his *plan*, to enforce his rights under the terms of the *plan*, or to clarify his rights to future benefits under the terms of the *plan*." (Emphasis added). The existence of an employee welfare benefit plan is thus an essential element of a claim for benefits under § 502(a)(1)(B), and must be sufficiently pled to survive a Rule 12(b)(6) challenge. *See Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 345–47 (5th Cir. 2014). ERISA 3(1) defines an "employee welfare benefit plan" as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits . . .

29 U.S.C. § 1002(1). The existence of a "plan, fund, or program" is established "'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Mem'l Hosp. Sys.*

*v. Northbrook Life Ins. Co.,* 904 F.2d 236, 240–41 (5th Cir. 1990) (quoting *Donovan v. Dillingham,* 688 F.2d 13167, 1373 (11th Cir. 1982).

In Count One, Elite alleges that HCSC is responsible for denying or underpaying 1159 claims submitted under ERISA plans during the relevant time period. *See* Dkt. 48, ¶ 27 n.7. Exhibit A, attached to the complaint, provides the date of submission, insurance and group identification numbers, charges, and payments for each claim submitted to HCSC from 2010–2012. Dkt. 48-1. Elite alleges that it has derivative standing to sue on behalf of plan participants based on assignments executed by each patient before services were rendered. Dkt. 48, ¶ 35. Elite specifically identifies only two ERISA plans by name (the "Halliburton Plan" and the "Texas Instruments Plan"), covering just two of the 1,159 ERISA claims. *Id.* at ¶¶ 37-38. For the rest, Elite generally alleges that these plans are "representative of the larger universe" of plans covering the remainder of the ERISA claims.  *Id.* at ¶ 39.

HCSC's motion urges that this count is insufficiently pled because it specifically identifies only two ERISA plans covering just two of the 1,159 separate ERISA claims listed in the complaint.  Dkt. 48, ¶¶ 37, 38.  HCSC contends that Elite has offered no good faith basis for alleging that the reimbursement provisions of these two plans are representative of the remaining un-named ERISA plans.

There is no question that, in at least these two instances, Elite has alleged an ERISA plan sufficient to support a § 502(a)(1)(B) claim. In each case the complaint names the plan, the plan sponsor, the employer, the covered employee, the plan administrator, and the claims administrator. The complaint also quotes the relevant plan language describing the "reasonable and customary" reimbursement standard which HCSC allegedly breached, not only in these two cases, but in the remainder as well. These allegations are definite enough to plead an ERISA plan

under the *Dillingham* test adopted by the Fifth Circuit, and HCSC does not really contest the point. Instead, it focuses on the lack of particular allegations concerning the remaining plans.

It is true that Elite offers only a bare-bones assertion that the Halliburton and Texas Instruments plans are "representative of the larger universe" of plans at issue, but that does not render the assertion improbable. After all, HCSC is an insurance company in the business of selling and administering its health insurance plans, and Elite alleges each claim denial at issue involved an HCSC-administered policy or plan. It seems reasonable to infer that many, if not most, of the remaining HCSC policies would contain similar reimbursement language for out-of-network services. Requiring Elite to plead the specific terms of every plan governing all 1,159 ERISA claims would produce an enormous and unwieldy complaint, far exceeding the plausibility standards imposed by *Twombly*.

Whether the terms of every plan at issue actually support Elite's position is more appropriately decided on motion for summary judgment. Elite has sufficiently stated a claim for benefits under § 502(a)(1)(B). HCSC's motion to dismiss Count One should be denied.

### Count Two: ERISA § 502(c) Statutory Penalty Claim

Elite also sues for statutory penalties under ERISA § 502(c) for HCSC's failure to provide requested copies of documents related to the claim denials at issue. Dkt. 48, ¶ 43. ERISA § 502(c)(1)(B) makes the plan administrator personally liable for a penalty of up to $110/day when the administrator "fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary." ERISA's penalty provisions must be strictly construed. *Kujanek v. Houston Poly Bag I, Ltd.,* 658 F.3d 483, 489 (5th Cir. 2011).

Elite asserted essentially the same claim in its original complaint, which was dismissed for lack of specificity. Given two chances to replead, Elite's Second Amended Complaint still fails to state a claim under § 502(c), for three reasons: (1) Elite's requests for information sought only information considered in denying claims, a category of information not subject to the penalty provisions of § 502(c); (2) Elite is neither a "participant" nor "beneficiary" of an ERISA benefit plan, and therefore not a proper plaintiff under § 502(c); and (3) HCSC is not the "administrator" for either of the ERISA plans identified in the complaint, and therefore not a proper defendant under this remedial provision.

***Disclosure not covered by penalty mandate.*** Elite alleges that on two occasions (July 24, 2014 and February 11, 2015) it sent letters to HCSC with the following demand:

> Please provide, within the next 30 days, copies of all documents, records, writings and any other information considered in your determination for all BCBS denied claims, including but not limited to, the following:
>
> ● Name and contact information for the plan administrator, claims administrator, and plan sponsor;
> ● Documents used, considered, or relied upon by the plan administrator or claims administrator in forming his/her decision;
> ● Names and title of persons who the plan administrator or claims administrator consulted with in forming his/her decision;
> ● Copies of the ENTIRE Master Plan;
> ● Copies of the Summary Plan Description;
> ● Copies of the Employer Plan; and
> ● Copies of any other documents under which the plan is established or operated.

Dkt. 48, ¶ 43. These documents were "requested for each of the 6692[sic] claims." *Id.*

Elite asserts that HCSC's refusal to provide the requested information violated two separate ERISA requirements: (1) the duty imposed by DOL regulation 29 CFR § 2560.503-1(h)(2)[2] to provide claim-denial documents during the "full and fair review" process mandated

---

[2] DOL regulation 29 C.F.R. § 2560.503-1(h) reads in pertinent part:
    (h) Appeal of adverse benefit determinations---
        (1) In general. Every employee benefit plan shall establish and maintain a procedure by which a
        claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an
        appropriate named fiduciary of the plan, and under which there will be a full and fair review of the

by ERISA § 503; and (2) the statutory duty under ERISA § 104(b)(4) to disclose, upon written request, the "latest updated summary plan description, and the latest annual report" and similar plan documents. But neither of these disclosure requirements were triggered by Elite's requests, at least so far as HCSC is concerned.

First, the cited DOL regulation, like the statutory provision it implements (ERISA § 503), imposes claim procedure requirements on the "plan," not the plan administrator. *Wilczynski v. Lumberman's Mut. Cas. Co.,* 93 F.3d 397, 406 (7th Cir. 1996).   This distinction is critical because ERISA § 502(c) authorizes a statutory penalty only for failures or refusals "to comply with a request for any information which such *administrator* is required by this title to furnish." (emphasis added).  While the Fifth Circuit has not yet considered the precise issue in a published decision[3], the First, Second, Third, Sixth , Seventh, Eighth, Ninth, and Tenth Circuits have all agreed that the failure to follow "full and fair review" procedures does not give rise to a statutory penalty claim under § 502(c). *See Lee v. ING Group, N.V.,* 829 F.3d 1158, 1159 (9th Cir. 2016); *Halo v. Yale Health Plan, Dir. of Benefits &Records Yale Univ.*, 819 F.3d 42, 58, 60–61 (2d Cir. 2016); *Medina v. Metro. Life Ins. Co.*, 588 F.3d 41, 48 (1st Cir. 2009); *Brown v. J.B. Hunt Transport Servs., Inc.*, 586 F.3d 1079, 1089 (8th Cir. 2009); *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 405–07 (7th Cir. 1996); *VanderKlok v. Provident Life and Accident Ins. Co.*, 956 F.2d 610, 618 (6th Cir. 1992); *Walter v. Int'l Ass'n of Machinists Pension Fund,* 949

---

claim and the adverse benefit determination.
(2) Full and fair review. Except as provided n paragraphs (h)(3) and (h)(4) of this section, the claims procedures of a plan will not be deemed to provide . . . full and fair review. . . unless the claims procedures—
   . . .
    (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

[3] The 5th Circuit has ruled that challenges to ERISA claim procedures are evaluated under a "substantial compliance" standard, a looser standard than that applied to ERISA 502(c) violations. *Lacy v. Fulbright & Jaworski LLP*, 405 F.3d 254, 256-57 (5th Cir. 2005).

F.2d 310, 315–16 (10th Cir. 1991); *Groves v. Modified Ret. Plan for Hourly Paid Emps. of the Johns Manville Corp. and Subsidiaries*, 803 F.2d 109, 116 (3d Cir. 1986).

Second, while ERISA § 104(b)(4) does impose certain disclosure requirements upon plan administrators, claim denial information is not among them. Section 104(b)(4) requires an administrator to provide, upon written request, "a copy of the *latest updated* summary plan description, and the *latest* annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan *is established or operated.*" (Emphasis added).  In other words, the plan administrator is obligated to provide the participant or beneficiary with *current* plan documents.

By contrast, Elite's 2014 and 2015 requests were limited to documents and information "considered in your determination for all BCBS denied claims" from July 9, 2010 through October 30, 2012.  While these requests did make isolated reference to plan documents, a fair reading of the entire request letter shows that it was not seeking current plan documents, but only those that were considered when the denial decisions were made, several years earlier. For this reason, the claim denial information requested by Elite in 2014 and 2015 did not trigger the statutory penalty for non-compliance authorized in § 502(c).

***No proper plaintiff.***  Another problem with the statutory penalty claim is that Elite is not the proper party to bring it.  Section 502(c)(1) provides that an administrator violating his duty to furnish information to a participant or beneficiary "may in the court's discretion be *personally liable* to such participant or beneficiary" for the statutory penalty. (Emphasis added). In other words, this remedy is personal to the requesting participant or beneficiary, and Elite is not a party enumerated to bring suit under this provision.

In response, Elite claims that it has valid assignments from each of the hundreds of participants and beneficiaries covered by this lawsuit, conferring derivative standing to pursue statutory penalty claims on their behalf.   However, nothing in ERISA § 502(c) authorizes participants or beneficiaries to assign away their rights to pursue statutory penalties. It is true that the Fifth Circuit and most other circuits have upheld the validity of welfare plan assignments to medical providers to pursue ERISA § 502(a)(1)(B) benefit claims on behalf of plan participants. *See e.g., Tango Transport v. Healthcare Fin. Services LLC,* 322 F.3d 888, 893 (5th Cir. 2003). As *Tango* explained, however, that decision was based on "the plain language of section 1132(a)" as well as the "absence of an anti-assignment clause [in ERISA] applicable to health benefits." *Id.*; *compare* 29 U.S.C. § 1056(d) (prohibiting assignment of pension benefits).

However, it is far from certain that the Fifth Circuit would recognize an assignment of a participant's right to request information under ERISA § 104(b)(4) or to pursue a claim for civil penalties under ERISA § 502(c). *See e.g., Shelby County Health care Corp. v. Genesis Furniture Industries, Inc.,* 100 F. Supp. 3d 577, 584-85 (N.D. Miss. 2015). After all, the right to request information is a right conferred by statute, not a contractual right under a benefit plan, and the statutory remedy is expressly given only to the requesting participant or beneficiary.

But even assuming that ERISA § 502(c) assignments were legally permissible, the particular language of the assignments obtained by Elite are inadequate to the task. Elite used two different assignment forms, depending on the patient's date of treatment. *Id.*, ¶¶ 19–20. For those treated before July 1, 2011, the scope of assignment was narrow: "In consideration of services rendered, I hereby transfer and assign to the hospital and/or physicians indicated all rights, title and interest in any payment due me for services described as provided in the stated policy or policies of insurance." *Id.*, ¶ 19 n.5.  This assignment is limited to the patient's right to

payment due for services provided, and says nothing about the right to request plan documents or to sue for civil penalties. *See Quality Infusion Care, Inc. v. Aetna Life Ins. Co., Inc.*, No. H-05-2929, 2006 WL 3487248, at *6 (S.D. Tex. Dec. 1, 2006) (rejecting assignment with similar language). On its face, this assignment does not purport to cover ERISA § 502(c) claims.

The second assignment form, used for those treated on or after July 1, 2011, was broader. In addition to the earlier language, this assignment includes "any legal or administrative claim or chose in action . . . concerning medical expenses incurred," specifically including "ERISA breach of fiduciary duty claims." It also includes the right to "obtain information regarding the claim to the same extent as me." *Id.* ¶ 20 n.6.   This language is likewise defective, in two respects. First, the only types of claims specifically mentioned are claims "concerning medical expenses" or "breach of fiduciary duty," neither of which are brought under ERISA § 502(c). Moreover, the assignment does not cover the predicate for a civil penalty claim under ERISA 104(b)(4), i.e. a 'written request of any participant or beneficiary" for current plan documents. The assignment only gives Elite the right to obtain information "regarding the claim," as opposed to current plan documents, which as noted earlier is the only type of information subject to ERISA § 104(b)(4).   Indeed, it would be quite odd for plan participants to assign away all their rights to obtain current plan documents, in perpetuity, to a single medical provider rendering medical services on a single occasion. Before reaching such a remarkable result, far more precise language than that presented here would be necessary (again, assuming that an assignment of this statutory right could *ever* be legally cognizable).

In sum, neither of the assignment forms used by Elite were adequate to confer derivative standing to bring statutory penalty claims under ERISA § 502(c).

***No proper defendant***.      Similarly, ERISA § 502(c) specifically names only the "administrator" as a proper party defendant. "Administrator" is a defined term under ERISA § 3(16)(A):

> The term "administrator" means---
>> (i)      the person specifically so designated by the terms of the instrument under which the plan is operated;
>> (ii)     if an administrator is not so designated, the plan sponsor;
>> (iii)    in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may be regulation prescribe.

Courts have routinely held that only a plan "administrator" as defined here may be held liable for statutory penalties under ERISA § 502(c). *See Thomas v. Reliance Standard Life Ins. Co.,* 136 F.3d 138, 1998 WL 30108, *4 (5th Cir. 1998) (unpublished); *see generally* Zanglein, Frolik & Stabile, *ERISA Litigation* 274 (5th ed. 2014) (collecting cases).

Elite alleges that HCSC "acted as and/or was designated as the plan administrator" for all claims covered by this case. Dkt 48, ¶ 14. HCSC denies this assertion, and argues, correctly, that Elite has failed to identify a single ERISA plan that designates HCSC as administrator.

In response, Elite contends that HCSC "undertook the duties of plan administrator and was effectively the *de facto* plan administrator." Dkt. 48, ¶ 14. However, the theory that ERISA § 502(c) imposes liability upon "de facto" administrators has no anchor in the statutory text. ERISA"s definition of "administrator" permits only three possibilities  --- the administrator is either (1) 'the person specifically so designated in the plan;" (2) absent a plan designation, the "plan sponsor;" or (3) absent a plan designation or identifiable plan sponsor, "such other person" as DOL regulations may prescribe. ERISA § 3(16)(A). Notably missing from this precise definition is anyone who might *de facto* undertake the functional duties of a plan administrator. *Cf.* ERISA § 3(21)(A) (defining "fiduciary" in terms of the functional duties performed).

The *de facto* administrator argument has been flatly rejected by at least eight circuits. *See Lee v. Burkhart,* 991 F.2d 1004, 1010 n. 5 (2d Cir. 1993); *Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 62 (4th Cir. 1992); *Gore v. El Paso Energy Corp. Long Term Disability Plan,* 477 F.3d 833, 842 (6th Cir. 2007); *Klosterman v. Western Gen. Mgmt. Inc.,* 32 F.3d 1119, 1122 (7th Cir. 1994); *Ross v. Rail Car Am. Grp. Disability Income Plan,* 285 F.3d 735, 743 (8th Cir. 2002); *Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 300 (9th Cir. 1989); *Averhart v. US West Mgmt. Pension Plan,* 46 F.3d 1480, 1489-90 (10th Cir. 1994); *Davis v. Liberty Mut. Ins. Co.,* 871 F.2d 1134, 1138 (D.C. Cir. 1989). Two circuits have held that the plan sponsor may be held liable for statutory penalties when it acts as plan administrator, regardless of the provisions of the plan document. *See Rosen v. TRW, Inc.,* 979 F.2d 191, 193-94 (11th Cir. 1992); *Law v. Ernst & Young,* 956 F.2d 364, 373-74 (1st Cir. 1992). But even those two circuits have refused to extend the *de facto* administrator doctrine to an insurance company involved in claims handling, such as HCSC. *See Tetreault v. Reliance Standard Life Ins. Co.,* 769 F.3d 49, 59 (1st Cir. 2014) (refusing to extend that circuit's *de facto* administrator doctrine to entities other than the employer); *Smiley v. Hartford Life & Accident Ins. Co.,* 610 Fed Appx. 8, 2015 WL 4385673, at *8-9 (11th Cir. July 17, 2015) ("We have consistently rejected the use of the *de facto* plan administrator doctrine where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer.") (internal quotes omitted).  *See generally* Zanglein, Frolik & Stabile, *ERISA Litigation*, 274-76 (5th ed. 2015) (collecting cases).

The Fifth Circuit has yet to weigh in with a published decision. In an early case, the court acknowledged the "intuitive appeal" of the *de facto* administrator doctrine in certain limited circumstances, but expressly declined to resolve the issue. *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1077 (5th Cir. 1990). In a later unpublished opinion, however, the Fifth Circuit

held that a third party claim administrator was not liable for violations of ERISA § 104(b)(1) notice requirements, citing with approval cases from the Seventh and Eighth Circuits rejecting the *de facto* administrator doctrine. *Thomas v. Reliance Standard Life Ins. Co.,* 136 F.3d 138, 1998 WL 30108, *4 (5th Cir. 1998).

Thus, Elite's assertion of *de facto* administrator liability under ERISA § 502(c) defies the great weight of authority, as well as the precise, non-functional terms ERISA employs to define the term "administrator."  Mindful also that statutory penalty provisions are to be strictly construed, this court declines to expand the scope of ERISA § 502(c) liability beyond the  single party enumerated by Congress – the plan administrator.[4]

For all these reasons, Count Two should be dismissed for failure to state a claim for civil penalties under ERISA § 502(c).

**Count Three: Breach of Contract**

In Count Three, Elite sues for breach of contract to recover the unpaid benefits it is allegedly owed under private and state-provided plans not covered by ERISA. The elements of a breach of contract claim in Texas are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach. *Aguiar v. Segal,* 167 S.W.3d 443, 450 (Tex. App. 2005).

HCSC again argues that Elite's failure to identify the plan provisions involved dooms its breach of contract claims, noting that the second amended complaint does not identify any non-ERISA plans. Elite alleges, however, that "[t]he operative plan terms for the private [non-ERISA] plans. . . are in no way different than the exemplar operative plan terms for the ERISA plans." Dkt. 48, ¶ 53. Thus, according to the complaint, the quoted plan terms of the Halliburton

---

[4]  For these reasons the Court finds unpersuasive the contrary decision in *Brown v. Aetna Life Ins. Co.,* 975 F.Supp.2d 610 (W.D. Tex. 2013), and respectfully declines to follow it.

and Texas Instruments plans are representative of the terms of the non-ERISA plans, and HCSC similarly failed to pay usual and customary rates in violation of the plan provisions. These allegations are sufficient to survive HCSC's 12(b)(6) challenge.

HCSC's motion to dismiss Count Three should be denied.

## Count Four: Promissory Estoppel

Count Four presents a state law claim based on promissory estoppel. Elite alleges that before performing the scheduled medical services, it routinely called HCSC to verify coverage. On each occasion, Elite claims that HCSC represented "that payments would be made in accordance with the 'Allowable Amount,' as defined in the health insurance plan."  Dkt. 48, ¶ 59. Moreover, Elite asserts it is industry custom to pay usual and customary rates, and HCSC had "a duty to alert [Elite] if the operative plan language differed from industry custom." *Id.*, ¶ 62. Because HCSC never advised Elite that any of the underlying plans would *not* pay usual and customary rates, Elite alleges that it provided medical services in reasonable reliance upon HCSC's promise to pay in accordance with the plan documents. *Id*.

Under Texas law, promissory estoppel requires: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 378–79 (Tex. App. 2007). The doctrine of promissory estoppel may be invoked only where no contract on the subject matter exists. *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 216 (2002); *Wheeler v. White,* 398 S.W. 2d 93, 97 (Tex. 1966) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). An "actual promise" is "an essential element for any promissory estoppel claim," and there can be no promissory estoppel claim without a "definite, unconditional promise." *See Davis v. Tex. Farm Bureau Ins.*, 470 S.W.3d 97, 108 (Tex. App. 2015). But when "a valid contract between the

parties covers the alleged promise, promissory estoppel is not applicable to that promise. Instead, the wronged party must seek damages under the contract."  *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.,* 939 S.W.2d 695, 699 (Tex. App. 1997); *Pasadena Associates v. Connor,* 460 S.W.2d 473, 481 (Tex. Civ. App. 1970). In other words, the doctrine of promissory estoppel may be invoked only where no contract on the subject matter exists. *Subaru of America, Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 216 (Tex. 2002); *Wheeler v. White,* 398 S.W. 2d 93, 97 (Tex. 1966).

Elite's promissory estoppel claim is founded upon precisely the same promise as that which undergirds its breach of contract claim---that HCSC would pay the "allowable amount" as defined in the underlying health plan. Because Elite has identified no other promise different than the one allegedly contained in the written plan, the doctrine of promissory estoppel is superfluous, and hence inapplicable. Count Four should be dismissed.

## CONCLUSION

For these reasons, Elite's § 502(c) statutory penalty claims and common law promissory estoppel claims should be dismissed with prejudice. HCSC's motion to dismiss Elite's claims for benefits under ERISA § 502(a)(1)(B) and state contract law should be denied.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. Failure to file timely objections precludes appellate review of factual findings or legal conclusions, except for plain error. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72.

Signed at Houston, Texas, on October 4, 2016.

Stephen Wm Smith
United States Magistrate Judge

14